1
2
3
4
5

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:   (310) 836-6000
Facsimile:   (310) 836-6010
Email:   service@braunlawgroup.com

6
7
8
9
10

Marc Stanley (*pro hac vice*)
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
Telephone:   (214) 443-4300
Facsimile:   (214) 443-0358
Email:

11
12

*Attorneys for Plaintiff*

13
14
15
16
17

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

18
19
20
21
22
23
24

**KAROLINA OCHOA, on behalf of herself and all others similarly situated,**

                    **Plaintiff,**

      **v.**

**CHURCH & DWIGHT CO., INC.,**

                    **Defendant.**

**CASE NO.: 5:17-cv-2019**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

25
26
27

Plaintiff Karolina Ochoa ("Plaintiff"), individually and on behalf of herself and all others similarly situated, brings this class action against Defendant Church & Dwight Co., Inc. ("Defendant"), demanding a trial by jury, and alleges as follows:

**INTRODUCTION**

1.     This is a proposed class action on behalf of a nationwide class ("Class") and a California sub-class ("Sub-class") (together, "Classes") of consumers seeking redress for Defendant's deceptive  practices associated with the advertising, labeling and sale of its Vitafusion PreNatal Multivitamin Gummy ("Product," "Multivitamin," or "Gummies") in violation of state consumer protection laws and common law.

2.     Defendant Church & Dwight Co., Inc. ("Church") is one of the biggest manufacturers of household goods in America today. It is publicly traded and estimated to be worth in excess of $3.5 billion dollars. It manufacturers hundreds of household and personal care products ranging from cleaning agents to pregnancy tests and is constantly acquiring new product lines to add to its portfolio. In the summer of 2012, Church acquired Avid Health Inc., a manufacturer of gummy vitamins and supplements, for $650 million. Among the brands Church acquired in that transaction was Vitafusion, self-lauded as the "#1 Adult Gummy Vitamin Brand." Among its products, Vitafusion makes a PreNatal Multivitamin Gummy  specifically formulated for pregnant women.

3.     It is axiomatic that a diet in which one receives sufficient vitamins and minerals is critical to a healthy pregnancy. While the basic principles of healthy eating remain the same during pregnancy, certain nutrients are particularly critical.

4.     One of these critical vitamins is folate or folic acid[1] — a B vitamin that helps prevent neural tube defects and serious abnormalities of the brain and spinal cord during fetal development. Folic acid has also been shown to decrease the risk of premature birth.

---

[1] The synthetic form of folate found in supplements and fortified foods is known as folic acid.

5.      Pregnant women, and women considering pregnancy are routinely encouraged to get sufficient amounts of folate or folic acid before conception and throughout pregnancy. According to the Institute of Medicine ("IOM") and the National Institutes of Health ("NIH"), women who could become pregnant should consume 400 micrograms ("mcg") of folate daily, and women who are pregnant should consume 600 mcg of folate daily.

6.      Because of the importance of folate, many foods are fortified with folic acid and pregnant women are encourage to take multivitamins containing increased amounts of folic acid.

7.      Although consumption of folic acid is critical, it is equally critical not to consume too much. According to the National Institutes of Health, folate that is naturally present in food is not harmful, but folic acid in supplements can be and should not be consumed in amounts above the Upper Tolerable Intake Limit ("Upper Limit") established by the IOM.

8.       For adult pregnant women, the Upper Limit for folic acid is 1000 mcg daily. Exceeding this Upper Limit has severe consequences.

9.      Vitafusion's PreNatal Gummy Multivitamin claims to contain 800 mcg of folic acid per serving—100% of the Recommended Daily Intake of that vitamin.

10.      Contrary to its label, however, the Product routinely contains amounts of folic acid materially in excess of the claimed 800 mcg and well in excess of the tolerable Upper Limits.

11.      By failing to label the folic content of its Product accurately, Defendant violates state and federal laws for dietary supplements, state consumer protection laws, and sells a Product that is potentially dangerous to both women and their unborn children.

**JURISDICTION AND VENUE**

12.      Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Ochoa resides in Riverside County. Defendant

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

is incorporated in Delaware and maintains its principal place of business in Ewing, New Jersey. The Sub-class consists of residents of California. The amount in controversy exceeds $5,000,000 for the Representative Plaintiff and members of the Classes collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Classes, and the profits reaped by Defendant from its transactions with Plaintiff and the Classes, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

13.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

## PARTIES

14.    During the Class Period, Plaintiff was a resident of Riverside County, California. Plaintiff purchased 3 bottles of Defendant's Multivitamins during her pregnancy in 2016 from a Walmart located at 6250 Valley Springs Pkwy, Riverside, CA 92507.

15.    Defendant is a Delaware corporation with its principal place of business in Ewing, New Jersey.

## GENERAL ALLEGATIONS

16.    Folate is a B-vitamin and an essential nutrient. It is naturally present in many foods, and the synthetic form of the vitamin, folic acid, is used in dietary supplements and fortified foods.

17.    Folate is necessary for our bodies to make DNA and other genetic material, and is necessary for our cells to divide. Because of its role in the synthesis of

---

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

DNA and other critical cell components, folate is especially important during phases of rapid cell growth—which is why higher levels of folate are recommended for pregnant women and their unborn babies.[2]

18.    According to scientific authorities, "women with insufficient folate intakes are at increased risk of giving birth to infants with neural tube defects," and are at increased risk of preterm delivery, fetal growth retardation, and infants with low birth weight.[3]

19.    Folate also plays a critical role in the formation of babies' spines—and folate deficiency increases the risk a child will suffer from spina bifida (a splayed vertebral column).[4]

20.    For these reasons, many doctors strongly recommend that pregnant women take a prenatal vitamin with folic acid daily. Indeed, in the United States, about two-thirds of pregnant women take supplements with folic acid.[5]

21.    Although sufficient amounts of folate is necessary for women's health, too much folic acid can affect the health of both pregnant women and their unborn children. Too much folate from food is not associated with health risks, but there is a high risk of toxicity from folic acid found in dietary supplements and fortified foods.[6]

22.    Exceeding the Upper Limit for folic acid established by the Institute of Medicine is dangerous and can cause adverse health effects. Excess folic acid can precipitate or exacerbate megaloblastic anemia and cognitive symptoms associated with B12 deficiency. It might also "accelerate the progression of preneoplastic lesions,

---

[2] NIH Fact Sheet, https://ods.od.nih.gov/factsheets/Folate-HealthProfessional/#h7. Lamers Y (2011). Folate recommendations for pregnancy, lactation, and infancy. Ann Nutr Metab 59(1): 32-37.

[3] NIH Fact Sheet, *available at* https://ods.od.nih.gov/factsheets/Folate-HealthProfessional/

[4] *Id.*

[5] C. Hoyo et al., *Folic Acid Supplementation Before and During Pregnancy in the Newborn Epigenetics Study (NEST)*, 11(1) BMC Pub. Health 1471 (Jan. 2011).

[6] https://www.nap.edu/read/6015/chapter/5#47

increasing the risk of colorectal and possibly other forms of cancer in certain individuals."[7]

23.     Exceeding the Upper Limit for folic acid can also lead to digestive problems, nausea, loss of appetite, bloating, gas, a bitter or unpleasant taste in the mouth, sleep disturbances, depression, excessive excitement, irritability, and a zinc deficiency.[8]

24.     Pregnant women are advised to take supplements with folic acid for the health of their babies. However, emerging science indicates that excess folic acid supplementation can actually harm the health of unborn babies and increase the risk a child will be born with autism.[9]

25.     Researchers from the Johns Hopkins Bloomberg School of Public Health examined data from the Boston Birth Cohort and checked the amount of folate in women who recently had given birth. "The researchers found that if a new mother has a very high level of folate right after giving birth . . . the risk that her child will develop an autism spectrum disorder doubles."[10]

26.     Defendant engages in a widespread and uniform marketing and advertising campaign to portray its Product as nutritious, healthful, and necessary for pregnant or lactating women. Defendant engages in this campaign to sell its Product to consumers and increase its profits.

---

[7] NIH Fact Sheet, *available at* https://ods.od.nih.gov/factsheets/Folate-HealthProfessional/; Cornelia M. Ulrich et al., *Folate Supplementation: Too Much of a Good Thing?*, 15(2) Cancer Epidemiol. Biomarkers Prev. 189 (2006).

[8] *See, e.g.*, http://www.mayoclinic.org/drugs-supplements/folate/safety/hrb-20059475; XXX find better cite.

[9] Johns Hopkins Bloomberg School of Public Health, *Too Much Folate in Pregnant Women Increases Risk for Autism, Study Suggests* (May 11, 2016), http://www.jhsph.edu/news/news-releases/2016/too-much-folate-in-pregnant-women-increases-risk-for-autism-study-suggests.html

[10] Johns Hopkins Bloomberg School of Public Health, Press Release: Too Much Folate in Pregnant Women Increases Risk for Autism, Study Suggests (May 11, 2016), *available at* http://www.jhsph.edu/news/news-releases/2016/too-much-folate-in-pregnant-women-increases-risk-for-autism-study-suggests.html

1    27.    Defendant represents that its Gummies contain 800 mcg of folic acid.

2    This is false and deceptive.

3                                **Illustration 1**

4                    **Vitafusion PreNatal Dietary Supplement**



27                              **Illustration 2**

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

**Nutrition Facts Panel Vitafusion Dietary Supplement**

| Supplement Facts | | | | | |
|---|---|---|---|---|---|
| Serving Size 2 Gummy Vitamins | | | | | |
| Servings Per Bottle 45 | | | | | |
| **Amount Per Serving** | | % Daily Value for Pregnant & Lactating Women | **Amount Per Serving** | | % Daily Value for Pregnant & Lactating Women |
| Calories | 20 | | Folic acid | 800 mcg | 100% |
| Total Carbohydrate | 4 g | ** | Vitamin B-12 (as cyanocobalamin) | 8 mcg | 100% |
| Sugars | 3 g | ** | Zinc (as zinc chelate) | 3.8 mg | 25% |
| Vitamin A (as retinyl palmitate) | 4000 IU | 50% | Choline (as choline chloride) | 10 mg | ** |
| Vitamin C (as ascorbic acid) | 30 mg | 50% | Omega-3 fatty acids (from fish oil) | 65 mg | ** |
| Vitamin D (as cholecalciferol) | 400 IU | 100% | | | |
| Vitamin E (as d-alpha-tocopheryl acetate) | 15 IU | 50% | DHA (Docosahexaenoic acid) | 50 mg | ** |
| Niacin (as inositol niacinate) | 20 mg | 100% | Other Omega-3 fatty acids | 15 mg | ** |
| Vitamin B-6 (as pyridoxine HCl) | 2.5 mg | 100% | ** Daily Value not established. | | |

28.    In truth, Vitafusion's Multivitamin contains folic acid far in excess of its 800 mcg claim. Independent laboratory testing reveals that theses Multivitamins routinely contain amounts of folic acid between 1,100 mcg and 2,047 mcg, which not only materially exceed the representation on the Product label and the maximum recommended daily amount, but also significantly exceed the tolerable Upper Limit for folic acid.[11]

29.    Plaintiff and other reasonable consumers relied on Defendant's labeling, as Defendant intended. Plaintiff affirmatively believed that Defendant verified that the

---

[11] 21 U.S.C. §343(a)(1) states that a food shall be deemed to be misbranded when "its labeling is false or misleading in any particular…" California's Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code §§ 109875 et seq, explicitly adopts "all food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100; Cal. Health & Safety Code § 110765 (" It is unlawful for any person to misbrand any food.").

amount of vitamins and minerals listed for the Gummies were, in fact, the actual amounts contained in the Gummies.

30.     Plaintiff relied on the representations that the Gummies were healthful and contained the amount of vitamins and nutrients represented on the labels. Plaintiff trusted Defendant's labeling of the Gummies, and believing that the Gummies contained safe amounts of vitamins and minerals was material to Plaintiff's decision to purchase the Gummies.

31.     Plaintiff did not know that the Gummies contained folic acid in excess of the amounts represented on the Product label.

32.     Plaintiff purchased the Gummies to protect her health and protect the health of her unborn child. She, like other reasonable consumers, read the Gummies' labels and relied on her belief that they were safe and healthy when she purchased them. Had she known the truth about the dangers of the Gummies, she would not have purchased them.

33.     Plaintiff consumed the Gummies as directed, and only stopped taking the Gummies after giving birth, and after discovering that the Gummies contained dangerous amounts of folic acid.

34.     In the future, if Plaintiff knew that she could trust the amount of folic acid represented on the Gummies' labels was accurate, she would purchase the Gummies again.

35.     Defendant's marketing and labeling led Plaintiff and other reasonable consumers to believe that the Gummies were safe, would contribute to their health and that of their unborn babies, and contained safe levels of folic acid. Instead, the Gummies contained materially excess amounts of folic acid and accordingly were misbranded, deceptive, and dangerous.

36.     Because Defendant's Gummies contain an amount of folic acid that is deceptive and dangerous, the Product is worthless to Plaintiff and other reasonable consumers.

37.     As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Classes have been harmed.

38.     Plaintiff alleges that Defendant's conduct violates California state consumer protection laws, is a breach of express and implied warranties and its otherwise grounds for restitution on the basis of unjust enrichment.

39.     Plaintiff also seeks injunctive and declaratory relief based on Defendant's conduct asserted in this Complaint. As of the date of this Complaint, upon information and belief, Defendant continues to advertise and sell its Vitafusion Gummies as containing 800 mcg of folic acid. Even if Defendant elected to remove the offending labels, it is not presently enjoined from putting the false representations back on its Product labels at will and continuing to mislead the consuming public. Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Defendant truthfully labels the amount of folic acid in the Gummies and refrains from manufacturing and selling prenatal supplements with amounts of folic acid in excess of tolerable Upper Limits.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated defined as follows:

  a.  **National**: All persons in the United States who purchased the Product in the United States during the Class Period.

  b.  **California** All persons in California who purchased the Product in California during the Class Period.

  c.  **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

41.     Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

42.     Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

43.     Upon information and belief, there are tens of thousands of members of the Classes. Therefore, individual joinder of all members of the Classes would be impracticable.

44.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

45.     Common questions of law or fact exist as to all members of the Classes. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a.  Whether Defendant marketed, packaged, or sold the Product to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations, including statements or representations concerning the amount of folic acid in the Product;

    b.  Whether Defendant omitted or misrepresented material facts in connection with the sales of its Product;

    c.   Whether Defendant participated in and pursued the common course of conduct complained of herein;

    d.  Whether Defendant representing the Products were healthful, safe, and contained the amounts of vitamins and minerals listed in the Supplements Facts Panel constitutes consumer fraud or an unfair or deceptive business practice;

    e.  Whether Defendant has been unjustly enriched as a result of its unlawful business practice;

    f.  Whether Defendant's actions as described above violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,

et seq. (the "UCL");

g.  Whether those representations violate the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. (the "FAL");

h.  Whether those representations violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. (the "CLRA");

i.  Whether Defendant's actions as described above constitute a breach of express or implied warranties;

j.  Whether Defendant should be enjoined from continuing the above-described practices;

k.  Whether Plaintiff and members of the Classes are entitled to declaratory relief; and

l.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

46.  Plaintiff's claims are typical of the claims of the Classes, in that Plaintiff was a consumer who purchased the Product that Defendant represented contained significantly lower levels of folic acid than it actually contained. Plaintiff, therefore, is no different in any relevant respect from any other Class Member who purchased the Product, and the relief sought is common to the Classes.

47.  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Classes.

48.  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class Member likely will be relatively small, especially given the relatively small cost of the

[products] at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Classes individually to effectively redress the wrongs done to them. Moreover, even if members of the Classes could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

49.     In the alternative, the Classes may be certified because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate preliminary and final equitable relief with respect to each Class.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty, Cal. Com. Code § 2313)

50.     Defendant made express warranties to Plaintiff and members of the Class that the Gummies they were purchasing had 800 mcg of folic acid, no less and certainly no more.

51.     The express warranties of the amount of folic acid made to Plaintiff and the Class appear on every label of the Gummies. This warranty regarding the nature of the Gummies marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

52.     Plaintiff and the Class purchased the Gummies in the belief that they conformed to the express warranties that were made on the Gummies' labels.

53.     Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

54.     Plaintiff and the members of the Class paid money for the Gummies. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Gummies. If Plaintiff and other members of the Class had known of the true nature of the Gummies, they would not have purchased them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

55.     Plaintiff and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

56.     Defendant made express warranties to Plaintiff and members of the Classes that the Product contained the amount of folic acid represented on the Product's Supplement Facts Panel. Instead, the Product contained an amount of folic acid that materially exceeded its represented amounts and was in excess of tolerable Upper Limits.

57.     These express warranties appear on every label of the Product. This promise regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

58.     Plaintiff and the Classes purchased the Product in the belief that they conformed to the express warranties that were made on the labels.

59.     Defendant breached the express warranties made to Plaintiff and members of the Classes by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Classes suffered injury and deserve to be compensated for the damages they suffered.

60.     Plaintiff and the members of the Classes paid money for the Product. However, Plaintiff and the members of the Classes did not obtain the full value of the advertised Product. If Plaintiff and other members of the Classes had known of the true nature of the Product, they would not have purchased it. Accordingly, Plaintiff

and members of the Classes have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

61.   Plaintiff and the Classes are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)

62.   Plaintiff and other Class members purchased the Product, which Defendant promoted, marketed, advertised, packaged and labeled using promises or affirmations of fact on the labels. Defendant impliedly warranted that the Product it sold conformed to these promises or affirmations when they did not. Defendant impliedly warranted that Product as of a particular kind and quality when it as not.

63.   Plaintiff and those similarly situated purchased the Product, relied on Defendant's representations that the Product was safe, healthful, and contained the amount of vitamins and minerals listed in the Supplement Facts Panel.

64.   Defendant breached the warranties implied at the time of sale in that Plaintiff and those similarly situated did not receive goods that they bargained for. Accordingly, the goods were not merchantable as conforming with the promises or affirmations of fact made on their labels, and were not merchantable as the kind and quality Defendant represented them to be.

65.   As a proximate result of these breaches of warranty by Defendant, Plaintiff and those similarly situated have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform with the promises or affirmations of fact made on their labels, and were not of the kind and quality Defendant represented. They were deprived of the benefit of their bargain and spent money on products that did not have any value, had less value than warranted, or that they would not have purchased and used had they known the true facts about them.

### THIRD CAUSE OF ACTION
### ("Unlawful" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)

66.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

67.     A business act or practice is "unlawful" if it violates any established state or federal law.

68.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code § 110765; See, also Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 ("FDCA") as the food labeling regulations of California. Cal. Health & Safety Code § 110100(a); *see also* Cal. Health & Safety Code §§ 110665, 110670.

69.     As described in detail above, by representing its Product contains 800 mcg of folic acid when in truth it contains a materially significant amount in excess, Defendant violates at a minimum 21 U.S.C. 343(a)(1) ("a food shall be deemed to be misbranded if its labeling is false or misleading in any particular") as incorporated by the California Sherman Law. Independently, by mislabeling the folic content of its Gummies, Defendant also violates Cal. Health & Safety Code § 110660 ("any food is misbranded if its labeling is false or misleading in any particular.")

70.     Defendant violated and continues to violate the Sherman Law, Article 6, Section 110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL through the false labeling of its Product. Defendant's identical conduct that violates the Sherman Law, also violates FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1), which declares food misbranded under federal law if its "labeling is false and

misleading in any particular." This identical conduct serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims to impose any standard of conduct that exceeds that which would violate FDCA § 403(a)(1).

71.     By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

72.     Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### FOURTH CAUSE OF ACTION
### ("Unfair" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

73.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

74.     A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

75.     Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Gummies as possessing an amount of folic acid that it did not possess. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and

practices. By committing the acts and practices alleged above, Defendant has engaged, and continues to engage, in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

76.     Through its unfair acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant has made on the Gummies, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FIFTH CAUSE OF ACTION
### ("Fraudulent" Business Practices in Violation of The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

77.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

78.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

79.     Defendant's acts and practices of mislabeling its Gummies as containing 800 mcg of folic acid despite the fact that the Products contained amounts materially in excess of 800 mcg and in excess of its tolerable Upper Limit.

80.     As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Gummies.

81.     Through its unfair acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such,

Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**SIXTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**

82.   Defendant uses advertising and packaging to sell its Gummies. Defendant is disseminating advertising regarding its Gummies which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

83.   In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

84.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

85.   Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

86.     Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SEVENTH CAUSE OF ACTION
### (Violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*)

87.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

88.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

89.     The purchases of the Gummies by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Gummies constitute "goods" within the meaning of Civil Code § 1761(a).

90.     Defendant has violated, and continues to violate, the CLRA in at least the following respects:

    a.  in violation of Civil Code § 1770(a)(5), Defendant represented that the transaction had characteristics which it did not have;

    b.  in violation of Civil Code § 1770(a)(7), Defendant represented that its goods were of a particular standard, quality or grade, which they were not; and

    c.  in violation of Civil Code § 1770(a)(9), Defendant advertised its goods (*i.e.*, the Defendant Products) with the intent not to provide what it advertised.

91.     Defendant knew, or should have known, that the labeling of its Gummies violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

92.     The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for her decision to purchase the Gummies. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from its Gummies labels, reliance may be presumed or inferred for all members of the Class.

93.     Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

94.     Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Gummies will be damaged by its acts and practices in the same way as have Plaintiff and the members of the proposed Class.

95.     Concurrent with this filing Plaintiff transmitted, pursuant to Civil Code § 1782, a certified letter notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code § 1770. If Defendant does not respond, or otherwise provides a deficient response, Plaintiff will amend this complaint as a matter of right to seek damages as provided for in Civil Code § 1780.

### EIGHTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)

96.     Defendant's conduct in enticing Plaintiff and the Class to purchase is Gummies with false and misleading packaging is unlawful because the statements contained on the Defendant Gummies Products' labels are untrue. Defendant took monies from Plaintiff and the Class for products promised to contain a specific amount of folic acid which it did not. Defendant has been unjustly enriched at the expense of

Plaintiff and the Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

97.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.    Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

D.    Other statutory penalties for Causes of Action for which they are available.

E.    Punitive Damages for Causes of Action for which they are available.

F.    A declaration and Order enjoining Defendant from marketing and labeling its Product deceptively, in violation of laws and regulations as specified in this Complaint.

G.    An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

H.     An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.     Such other and further relief as may be deemed necessary or appropriate.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: October 3, 2017                    Respectfully submitted,


Michael D. Braun
**BRAUN LAW GROUP, P.C.**
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:    (310) 836-6000
Facsimile:    (310) 836-6010
Email: service@braunlawgroup.com

Marc Stanley
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, TX 75206
Telephone:    (214) 443-4300
Facsimile:    (214) 443-0358


*Counsel for Plaintiff*

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF